**EXHIBIT 1**

Case 1:05-cv-01012-ESH   Document 13-2   Filed 07/14/2008   Page 1 of 5

## DECLARATION OF SANDRA L. HODGKINSON

I, Sandra L. Hodgkinson, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1. I am the Deputy Assistant Secretary of Defense for Detainee Affairs in the Department of Defense ("DoD"). My office is organized under the office of the Under Secretary of Defense for Policy. The Office of Detainee Affairs, which I supervise, is responsible for providing policy advice to the Under Secretary of Defense on matters regarding detainees in DoD control. I have served in this position since July 9, 2007. The statements in paragraphs 5 through 8 of this Declaration provide a general overview of the process of transferring detainees in DoD control at the United States Naval Base at Guantanamo Bay, Cuba ("GTMO"), to the control of a foreign government. These statements are not intended to be an exhaustive description of all of the steps that might be undertaken in particular cases, but rather they reflect United States policy and practices with respect to transfers of detainees from GTMO. I make this declaration based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. One of DoD's current missions is to use all necessary and appropriate force to defeat the al Qaeda terrorist network and its supporters. In the course of that campaign – which remains ongoing – the United States and its allies have captured thousands of individuals overseas, virtually all of whom are foreign nationals. Through a screening and evaluation process, DoD determines whether the individuals should be detained during the conflict as enemy combatants. As of July 2, 2008, approximately 265 foreign nationals are being held by DoD at GTMO.

3. It is lawful and appropriate for DoD to detain enemy combatants as long as hostilities are ongoing. Nonetheless, DoD has no interest in detaining enemy combatants longer than necessary. Accordingly, DoD conducts regular reviews of GTMO detainees who have been determined to be enemy combatants but have not been referred to military commission or previously cleared for transfer or release to determine whether continued detention is warranted based on factors such as whether the detainee continues to pose a threat to the United States and its allies. Where continued detention is deemed no longer necessary, a detainee may be transferred to the control of another government for release. Furthermore, the United States also transfers GTMO detainees, under appropriate circumstances, to the control of other governments when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies. Once transferred, detainees may be subject to detention, investigation, and/or prosecution if appropriate under the receiving country's laws. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country, including a country that may have a law enforcement, prosecution, or other interest in the detainee.

4. Since 2002, approximately 500 detainees have departed Guantanamo for other countries including Albania, Algeria, Afghanistan, Australia, Bangladesh, Bahrain, Belgium, Denmark, Egypt, France, Germany, Iran, Iraq, Jordan, Kuwait, Libya, Maldives, Mauritania, Morocco, Pakistan, Russia, Saudi Arabia, Spain, Sweden, Sudan, Tajikistan, Tunisia, Turkey, Uganda, the United Kingdom, and Yemen.

5. When the DoD transfers GTMO detainees to the control of other governments, the DoD does so after dialogue with the receiving government. Such dialogue may be initiated by the receiving government or may be initiated by the United States. Unless a transfer is to be a transfer for release, a purpose of the dialogue is to ascertain or establish what measures the receiving government intends to take pursuant to its own domestic laws and independent

determinations that will ensure that the detainee will not pose a continuing threat to the United States and its allies.  In all cases of transfer, the detainee is transferred entirely to the custody and control of the other government, and once transferred, is no longer in the custody and control of the United States; the individual is detained, if at all, by the foreign government pursuant to its own laws and not on behalf of the United States.  When detainees are transferred to the custody or control of their home governments, it is frequently the case that the home government takes the detainee into its custody, at least for an initial period.  In some cases, the home government has subsequently released the detainee, sometimes after a period of questioning or investigation, while in other cases, the detainees have remained in confinement or subject to other restrictions in their home countries for various reasons based on the determinations and laws of the home government.  Of the GTMO detainees who have been transferred by the DoD to the control of their home countries, most have subsequently been released from detention.

      6.  Once a DoD transfer of a GTMO detainee is proposed, the views of interested United States Government agencies are considered.  For such a transfer, it is the policy of the United States, consistent with the approach taken by the United States in implementing the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, not to repatriate or transfer individuals to other countries where it believes it is more likely than not that they will be tortured.   Therefore, if a transfer is deemed appropriate, a process is undertaken, involving the Department of State, in which appropriate assurances regarding the detainee's treatment are sought from the country to whom the transfer of the detainee is proposed.   The Declaration of Clint Williamson dated July 7, 2008, accurately and completely describes that process to the best of my knowledge and belief.

7. The ultimate decision to transfer a detainee to the control of another government is made with the involvement of senior United States Government officials. The Secretary of Defense or his designee ultimately approves transfers. Decisions on transfers are made on a case-by-case basis, taking into account the particular circumstances of the transfer, the country, and the detainee concerned, as well as any assurances received from the receiving government. If a case were to arise in which the assurances obtained from the receiving government were not sufficient when balanced against treatment concerns, the United States would not transfer a detainee to the control of that government unless the concerns were satisfactorily resolved. Circumstances have arisen in the past where the Department of Defense elected not to transfer detainees to their country of origin because of torture concerns.

8. The Executive Branch is best situated to make decisions regarding transfers of detainees, as noted in the Declaration of Clint Williamson. Requiring the United States to disclose information unilaterally about proposed transfers and negotiations outside of appropriate executive branch agencies could adversely affect the relationship of the United States with other countries and impede our country's ability to obtain vital cooperation from concerned governments with respect to military, law enforcement, and intelligence efforts, including with respect to our joint efforts in the war on terrorism. Judicial review, including the possible overturning of decisions to transfer and delays in transfers occasioned by review and possible appeals, could lead to similar harm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 9, 2008.

Sandra L. Hodgkinson